**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**RONALD CALVIN THOMAS**                                                 **PLAINTIFF**

VS.                                                 **CAUSE NO. 3:14-cv-328-CWR-LRA**

**SCOTT COUNTY, MISSISSIPPI; THE SCOTT COUNTY**
**MISSISSIPPI SHERIFF'S DEPARTMENT; MIKE LEE, SHERIFF**
**OF SCOTT COUNTY; DONALD SIMPSON AND BRAD ELLIS;**
**SCOTT COUNTY DEPUTY SHERIFFS, AND DOES 1 – 10**         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment premised on immunity filed by Defendants Sheriff Mike Lee and Deputy Sheriffs Brad Ellis and Donald Simpson (collectively, "Defendants") in their individual capacities. Docket No. 7. Plaintiff Ronald Thomas has filed a response, Docket No. 16, to which Defendants have submitted a rebuttal, Docket No. 17. After careful consideration of the arguments and the applicable authorities, the court rules as follows:

## BACKGROUND

This suit stems from Thomas's allegations that he was severely beaten and arrested in Scott County, Mississippi by Simpson and Ellis on or around December 17, 2012. Docket No. 1-1, Compl. at 6. Plaintiff claims that, without provocation, Defendants forced him onto the ground, tightly placed handcuffs around his wrists, and severely beat his head, neck, back, his torso, arms and legs. *Id*. at 9. Thomas alleges that he does not know why Defendants approached and arrested him. *Id*. at 8. However, the following background sheds light on what led to Thomas's arrest.

Of course, the parties tell two different versions of the events.

1

**Plaintiff's version.** According to Thomas, on December 4, 2012, he and his wife, Christie, were involved in a domestic dispute in which the police was called to Thomas's house. Docket No. 18-2, Pl.'s Dep. at 31, 34-37. Simpson arrived at the scene and began speaking to Thomas outside of his home. *Id*. at 40. A fight eventually erupted between the two men, leaving Simpson with a broken nose. *Id*. at 41, 44-45, 48-49.

Thomas was arrested, booked and held in the Scott County Jail on a number of charges, including malicious mischief, domestic violence, assault on a law enforcement officer and felon in possession of a firearm. He had his initial appearance, on December 6, 2012, and bond was set for him at $300,000. Pl.'s Dep. at 51. On that day, he hired Maury Walley as his bail bondsman and posted bond. *See id*. Thomas asserts that he was released on the condition that he get no closer than 500 feet[1] from his home where his wife was staying.[2] *Id*. at 69. His wife and her three children were granted a protective order against him on December 5, 2012, with an expiration date of December 15, 2012.[3] *See* Docket No. 7-4, Protective Order at 6. The protective order prohibited Thomas from contacting them either in person, by phone, electronic communication or through any third person, in addition to prohibiting him from going within 500 yards of them. *Id*. at 4. He was also served a summons ordering him to appear in court at 1:00 p.m. on December 11, 2012, to answer to the charges in the Order of Protection. *Id*. at 2-3.

On December 17, 2012, Thomas visited his wife's home to place Christmas presents under the pine tree outside the house. Pl.'s Dep. at 74. When his wife saw him, Thomas fled into

---

[1] Thomas testifies that he could not get closer than 500 feet, but the protective order states that he could get no closer than 500 yards. Docket No. 7-4, Protective Order at 6.
[2] Counsel for Plaintiff points out that the Initial Appearance setting bond does not show any conditions attached to his bond.
[3] There is a discrepancy in the effective expiration date. One portion of the document says it is December 15, *see*, Docket No. 7-4, at 1, while another portion of that same document shows that it is December 16. *Id*. at 6.

2

the woods. *Id*. As he was running, Thomas called his friend, David Brantley, and told Brantley to pick him up. *Id*. at 89.

After some time passed, Thomas began receiving numerous calls from Walley, to which he did not respond. *Id*. 109-12. Thomas believed that he may have gotten himself into trouble for violating the protective order, so he eventually called Walley so that they could meet and discuss what had occurred. *Id*. at 103. He suspected that he would have to go back to jail.[4] *Id*.

Once Thomas called Walley, Walley told Thomas to meet him in the parking lot of the Good Hope IGA. *Id*. at 104. When Thomas arrived, there were no other cars in the parking lot. *Id*. at 107. He walked up to Walley's window to tell him what had happened, and in the midst of his conversation with Walley, he alleges that he was beaten by the Defendants. *Id*. at 110. Although he cannot remember the incident clearly, Thomas believes that two officers were hiding in the truck, emerged with their flashlights, and began beating him with them from behind. *Id*. at 129.

Next, Thomas remembers seeing "blue lights" appear and guns being drawn as the two individual police officers from the truck beat on him. *Id*. at 129-31. As he was being beaten, Walley forced his knee on Thomas's back. *Id*. at 131. He does not know how many officers participated in beating him, but he recalls "getting hit from everywhere with flashlights." *Id*. He claims that he recognized Ellis and Simpson among those officers beating him with flashlights on the face. *Id*. at 137-38. Thomas contends that he did not resist the officers at any point. *Id*. at 139. As a result of his beating, Thomas claims that he sustained "numerous wounds, bruises, contusions, abrasions, cuts, scrapes, and a broken nose." Pl.'s Brief at 6.

---

[4] In his deposition, Thomas revealed that he had violated the protective order before around December 13, 2012. *Id*. at 113.

**Defendants' version.** Defendants fill in some points missing from Thomas's side of the story.

Defendants allege that on December 17, 2012, the Scott County Sheriff's Department (the "Department") received notice that Thomas violated the protective order by entering his house where his wife stayed. Docket No. 7-5. Walley informed the Department that he and Thomas would meet at the Good Hope IGA parking lot so that Thomas could surrender. *Id*. Defendants Lee and Simpson were among the officers asked to assist in the bond surrender, so they waited across the street from the parking lot in a county-issued SUV. *Id*. As Thomas began speaking to Walley, the officers drove their car up to them with their blue lights on. *Id*. The officers exited their vehicle with guns drawn[5] but holstered them to assist Walley with restraining Thomas. *Id*. Ellis and Simpson stood on the side of Thomas as Walley attempted to handcuff Thomas from behind, but Walley dropped his handcuffs. *Id*. At this point, Thomas resisted and a struggle ensued, with the officers falling to their knees and Thomas's face smacking the concrete. *Id*. The officers finally handcuffed Thomas, and were forced to place leg restraints on him because he would not stop kicking. *Id*.

On December 18, 2012, Thomas was charged with resisting arrest, and a probation order was entered the following day placing Thomas on house arrest and other restrictions. *See* Docket No. 7-5 at 7-8. On March 18, 2014, Thomas filed the instant lawsuit against several defendants, including Scott County, Sheriff Mike Lee, and Simpson and Ellis in their individual capacities,[6] alleging the following claims pursuant to 42 U.S.C. § 1983: excessive force, unlawful arrest,

---

[5] According to a police report, Lee believed that Thomas had hidden a handgun in his yard on December 4, 2012. Docket No. 7-5 at 2. Lee believed that Thomas returned to his yard on the night of December 17 in order to retrieve this firearm. Docket No. 7-5 at 2. Lee explains that when they approached Thomas in the parking lot, they had their guns drawn and demanded him to hold his hands up out of their suspicion that Thomas had retrieved his handgun and may have had it in his possession. Docket No. 7-5 at 2.

[6] Lee is also being sued in his official capacity.

unlawful search and seizure, and deprivation of due process. The Complaint also advances state law claims of false arrest, malicious prosecution, and intentional and negligent infliction of emotional distress. Compl. at 12-17. Thomas's claims arise from his arrest on December 17, 2012.

In their motion for summary judgment filed on June 14, 2014, Defendants argue that they are entitled to qualified immunity on Thomas's individual capacity claims against them under federal law. Defendants also assert that Thomas's state law claims are all subject to dismissal under the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. §§ 11-46-1, *et seq*.

## LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but

unlawful search and seizure, and deprivation of due process. The Complaint also advances state law claims of false arrest, malicious prosecution, and intentional and negligent infliction of emotional distress. Compl. at 12-17. Thomas's claims arise from his arrest on December 17, 2012.

In their motion for summary judgment filed on June 14, 2014, Defendants argue that they are entitled to qualified immunity on Thomas's individual capacity claims against them under federal law. Defendants also assert that Thomas's state law claims are all subject to dismissal under the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. §§ 11-46-1, *et seq*.

## LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but

unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### B. Qualified immunity

Qualified immunity "protects government officials 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A two-part test is used to determine whether an officer is entitled to qualified immunity. *See, e.g., Martinez–Aguero v. Gonzalez*, 459 F.3d 618, 621 (5th Cir. 2006). The Court must determine "(1) whether an official's conduct violated the plaintiff's constitutional rights, and (2) whether the right violated was clearly established at the time of the violation." *Poole v. City of Shreveport*, 691 F.3d 624, 637 (5th Cir. 2012) (citing *Pearson*, 555 U.S. at 232). The Court has discretion to decide which prong of the test should be answered first. *Id.* at 637–38.

## LAW AND ANALYSIS

### I. Federal Law Claims Against Defendants Simpson and Ellis

**False Arrest.**

Thomas argues that his arrest on December 17, 2012, violated the Fourth Amendment because the officers lacked probable cause.

"In order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (citation omitted). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an

offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quotation marks and citation omitted). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Deville*, 567 F.3d at 164 (quotation marks, citation, and emphasis omitted).

When the defense of qualified immunity is asserted in a false arrest case, "the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010) (citations omitted). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (quotation marks and citation omitted).

Defendants argue that they arrested Thomas on December 17, 2012, in response to a Scott County 911 dispatch request to assist Walley with the bond surrender of Thomas for the violation of his protective order. Docket No. 8 at 11. As Defendants' motion notes, Mississippi law states that a violation of a protective order "or a bond condition pursuant to § 99-5-37 is a "misdemeanor punishable by imprisonment in the county jail for not more than six (6) months . . . ." Miss. Code Ann. § 93-21-21. In addition, Mississippi law provides that an officer may arrest a person "with or without a warrant when he has probable cause to believe that the person has" knowingly violated such protective order. Miss. Code. Ann. § 99-3-7(3)(a).

The record shows that the protective order may not have been in effect at the time of Thomas' arrest; however, the law protects Defendants even if they mistakenly believed that Thomas violated the protective order if that belief was reasonable. *See Club Retro*, 568 F.3d at 206. In the instant case, Thomas himself believed that he had broken the law by going near his wife's house, and the officers were responding to a dispatch that Thomas was in violation of the

7

protection order, that he had been seen inside the residence, and that he "then took off on foot into the woods." Docket No. 7-5, at 2. *See also* Docket No. 7-2, at 2 ("We had been notified by dispatch earlier in the day that Thomas was in violation of a protective order relating to his wife and we had been asked by Walley to assist with bringing Thomas to the Scott County7Jail and surrender Thomas on bond."). Therefore, Defendants' belief that he violated the protective order was reasonable and the court must grant Defendants qualified immunity from Plaintiff's false arrest claim under § 1983.

***Heck v. Humphrey*, 512 U.S. 477 (1994).**

Defendants also contend that "any claim for false arrest, illegal search and seizure and violation of due process" brought under section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights under Section 1983 if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486-87. The district court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (citation omitted).

The Fifth Circuit Court of Appeals has applied *Heck* to proceedings that call into question the fact or duration of probation. *Cotton v. Tex. Dep't Criminal Justice*, 35 F.3d 560, 560 (5th Cir. 1994). Here, Defendants have provided the court with a probation order entered on

December 19, 2012, stating that Thomas was found guilty of violating the conditions of his bond by resisting arrest on December 17, 2012. *See* Docket No. 7-5 at 7-8. Thomas's allegations of unlawful search and arrest and violation of due process, if true, would necessarily imply the invalidity of the probation order entered on December 19, 2012. Therefore, Thomas cannot state any claims for unlawful arrest, illegal search and seizure, and violations of due process.

**Excessive Force.**

Because *Heck* is triggered in this case, the court must assess whether Thomas may retain his Fourth Amendment excessive force claim, even though Defendants did not argue that Thomas's excessive force claim is barred by *Heck* in their motion for summary judgment.

The Fifth Circuit has instructed that

> the determination of whether [§ 1983 excessive-force] claims are barred [by Heck] is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.

*Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). Under that framework, *Heck* does not necessarily bar an excessive force claim where the plaintiff is found guilty of resisting arrest. *See Harvey v. City of Brandon, Miss.*, No. 3:14CV739-DPJ-FKB, 2015 WL 461811, at *3 (S.D. Miss. Feb. 4, 2015). In *Harvey*, for example, Judge Jordan noted "that a plaintiff who concedes that he resisted arrest but nevertheless contends that excessive force was used against him would not find his Fourth Amendment claim barred by Heck." *Id*. (citing *Jenkins v. Town of Vardaman, Miss.*, 899 F.Supp.2d 526, 536 (N.D. Miss. 2012)). On the other hand, *Heck* bars excessive force claims "based on a single violent encounter during which the officers [] used excessive force and [the plaintiff claims] he was wholly innocent." *Id*. (quoting *Whatley v. Coffin*, 496 F. App'x 414, 417 (5th Cir. 2012)).

9

The Court finds that *Heck* bars Thomas's excessive force claim under the facts alleged. Here, Thomas claims that he did not resist arrest, suggesting that he was "wholly innocent." *See* Pl's Dep. at 139. As such, a favorable determination of Thomas's claim would challenge the probation order which found Thomas guilty of resisting arrest. Therefore, Thomas's excessive force claim will be dismissed.

## II.     Federal Law Claims Against Sheriff Lee

Thomas has not specifically alleged any claim against Defendant Lee other than stating in his Complaint that Lee "was responsible for ensuring that his agents, servants, and employees, including [] Simpson and Ellis, understood and obeyed the laws of the State of Mississippi, the United States, and [Scott County]." Compl. at 4. It appears that Thomas seeks to hold Lee liable as supervisors of Simpson and Lee. "Supervisory officials cannot be held liable under section 1983 for the action so of subordinates, such as [Simpson and Ellis], on any theory of vicarious or *respondeat superior* liability. Rather, [Thomas] must show that the conduct of [Lee] denied [him] his constitutional rights." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). If the court must construe a claim against Lee from the Complaint, that claim must be for failure to train or supervise.

When a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis*, 406 F.3d 381. Here, Thomas has made no attempt to satisfy the requisite elements in order to maintain his claim. For example, he has not demonstrated that the alleged failure to train was causally

connected to the constitutional injury. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). The court therefore finds that this claim must be dismissed.

### III.     State Law Claims

As for Thomas's state law claims, Defendants argue that they cannot be subjected to personal liability for acts or omissions occurring within the course of employment. *See*, *e.g.*, Miss. Code Ann. § 11-46-7(2); *Roderick v. City of Gulfport*, 144 F.Supp.2d 622, 638 (S.D. Miss. 2000); *Patton v. Hinds County Juvenile Detention Ctr. (Henley-Young)*, No. 3:10cv0138, 2011 WL 2912897, at *5 (S.D. Miss. July 18, 2011). Thomas folds in response to this argument and concedes that his intentional infliction of emotional distress claim was not timely filed. Thomas makes no serious attempt to pursue his state law claims beyond the complaint. *See* Pl.'s brief at 16. As such, Defendants' motion is granted as to these claims.

### CONCLUSION

For the foregoing reasons, the court grants Defendants' motion for summary judgment premised on immunity. Within ten days, the parties are instructed to contact the chambers of the Magistrate Judge for entry of a scheduling order.

**SO ORDERED AND ADJUDGED**, this the 21st day of August, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE